**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DONOVAN DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14-CV-1563 CAS |
| | ) |
| ST. LOUIS COUNTY, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This removed matter is before the Court on motions to dismiss filed by each of the defendants. Plaintiff Donovan Davis asserts state law claims of medical malpractice and negligent supervision and five counts under 42 U.S.C. § 1983. The defendants are St. Louis County, Missouri, St. Louis University, Erica P. Criss, APN, Fred Rottnek, M.D., and Mary V. Hastings, M.D. For the following reasons, the Court will grant the defendants' motions to dismiss Counts I and II without prejudice; and grant the motions to dismiss plaintiff's § 1983 claims.

## I. Background

On March 1, 2013, plaintiff was transferred from the St. Louis City Department of Corrections to St. Louis County for the purpose of incarceration at the St. Louis County Jail. Plaintiff is a Type 1 diabetic, and at the time of the transfer was using an insulin pump, a device that connects directly into the body and delivers insulin on a continuous basis. Plaintiff alleges that defendant Criss ordered his insulin pump removed from his body, defendant Rottnek ordered that he not be given insulin until his levels could be established, and that jail personnel failed to monitor his blood sugar level and provided him a high-carbohydrate and high-sugar diet with no alternative offered.

The complaint alleges that plaintiff's blood sugar level was tested at 3:00 p.m. on March 1, 22013 and was found to be 223, above normal, but he was not given any insulin. By 2:30 a.m. on March 3, 2013, plaintiff was vomiting and said he felt his blood sugar was elevated. Plaintiff's blood sugar was checked and found to be 388. Plaintiff was transferred to the jail infirmary and given insulin and IV fluids by order of defendant Hastings, but continued to exhibit excessively high blood sugar levels, lethargy and nausea. At 11:45 p.m. on March 3, 2013, defendant Hastings ordered that plaintiff be transferred to the hospital by ambulance "non-emergently." On March 4, 2013, plaintiff was admitted to the intensive care unit of St. Louis University Hospital with an admitting diagnosis of diabetic ketoacidosis, a life-threatening condition. Plaintiff was hospitalized for three days.

Plaintiff alleges that defendant Criss was an employee and/or agent of St. Louis County. Complaint, ¶ 6. Plaintiff alleges that St. Louis University is a research university that "had an agreement, relationship, contract or association with St. Louis County, Missouri, regarding the care and treatment of detainees and inmates" in the county's control. Id., ¶¶ 7-8. Plaintiff alleges that defendants Rottnek and Hastings are doctors who are agents or employees of St. Louis University, id., ¶¶ 9-10, who acted "under the direction and control" of St. Louis University through its agreement with St. Louis County. Id., ¶ 36.

## II. Legal Standard

As a threshold matter, defendants Rottnek and Hastings filed a Joint Answer to plaintiff's First Amended Complaint (Doc. 8), before filing their motions to dismiss, and defendant St. Louis University also filed an Answer (Doc. 31) prior to filing its motions to dismiss. A Rule 12(b)(6) motion technically cannot be filed after an answer has been submitted, see Fed. R. Civ. P. 12(b). Rule 12(h)(2) provides, however, that a defense of failure to state a claim upon which relief can be

granted may be raised in a motion for judgment on the pleadings under Rule 12(c). The Court will therefore construe these defendants' motions to dismiss as motions for judgment on the pleadings under Rule 12(c). See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The distinction is "purely formal" as a motion under Rule 12(c) is reviewed under the standards that govern a Rule 12(b)(6) motion. Westcott, 901 F.2d at 1488.

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions, however.  Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations.  Id.

To survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory."  Gregory v. Dillards, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation marks and citation omitted).

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests.  A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

Id. (quotation marks and internal citations omitted).

### III. Discussion

A.  *Plaintiff's State Law Claims are Subject to Dismissal for Failure to File Health Care Affidavit Required by § 538.225, Mo. Rev. Stat.*

Defendants Rottnek, Hastings, St. Louis University, St. Louis County, Missouri and Criss move to dismiss plaintiff's state law medical malpractice claim and negligent supervision claims in Counts I and II, asserting that plaintiff has failed to file an affidavit stating he has obtained the written opinion of a legally qualified health care provider that the defendant health care providers failed to use such care as a reasonably prudent and careful health care provider would have used

under similar circumstances, and that such failure directly caused or contributed to the damages he claims.[1]

Section 538.225, Missouri Revised Statutes (2000), requires a plaintiff to file an affidavit attesting to the merits of any action against a health care provider.  <u>Devitre v. Orthopedic Ctr. of St. Louis, LLC</u>, 349 S.W.3d 327, 331 (Mo. 2011) (en banc).  The relevant portions of section 538.225 provide:

> 1.  In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.
> . . . .
>
> 5.  Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.
>
> 6.  If the plaintiff or his attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice.

§ 538.225, Mo. Rev. Stat.

Missouri courts apply a two-part test to determine whether a plaintiff is required to file a health care affidavit under the statute.  <u>Devitre</u>, 349 S.W.3d at 331-32.  First, it must be determined whether the relationship between the parties is that of health care provider and recipient.  <u>Id.</u>

---

[1]Defendants Rottnek and Hastings filed separate joint motions to dismiss Counts I (Doc. 9) and Count II (Doc. 10) on August 29, 2014, while this case was still pending in state court.  Rottnek and Hastings subsequently filed a joint motion to dismiss both Counts I and II (Doc. 43), which alleges a different basis for dismissal of Count II than did their original motion.  The Court will deny the initial motions to dismiss Count I and Count II as moot, based on the filing of the subsequent joint motion directed to those counts.

Second, it must be determined whether the true claim relates solely to the provision of health care services. Id. at 332; Crider v. Barnes-Jewish St. Peters Hosp., Inc., 363 S.W.3d 127, 130 (Mo. Ct. App. 2012). "This analysis applies regardless of how the plaintiff characterizes his or her claims." Devitre, 349 S.W.3d at 331-32 (internal citation and quoted case omitted).

Here, the first part of the test is met, as there is no dispute that the relationship between the parties is that of health care providers and recipient. The second part of the test is also met. Count I, for medical malpractice, relates solely to the provision of health care services. Count II, for negligent supervision, also relates solely to the provision of health care services. Plaintiff's claim for negligent supervision is based on the defendants' actions as previously described in Count I, "includ[ing] but not limited to the decision and/or policy to remove an insulin pump from a type 1 diabetic individual[.]" Complaint at 6, ¶ 31.

"Section 538.225.6 of the statute requires the trial court to dismiss the action without prejudice, upon motion of [a] party, if the plaintiff does not file a health care affidavit." Thomas v. Miller, 447 S.W.3d 667 (Mo. Ct. App. 2014). Upon a well-taken motion under the statute, dismissal is mandatory, not discretionary. Id. (citing SSM Health Care St. Louis v. Schneider, 229 S.W.3d 279, 281 (Mo. Ct. App. 2007)). Here, plaintiff concedes that he has not filed the health care affidavit required by § 538.225. The motions to dismiss Counts I and II must therefore be granted. Pursuant to the statute, the dismissal is without prejudice. Because Counts I and II must be dismissed for failure to comply with § 538.225, the Court does not reach the defendants' additional arguments in support of the dismissal of Count II.[2]

---

[2]As a result, St. Louis University's separate Motion to Dismiss Count II for failure to state a claim upon which relief can be granted will be denied as moot.

B.  *Plaintiff's Claims Under 42 U.S.C. § 1983*

Counts III through VII of the complaint assert claims under 42 U.S.C. § 1983.  These counts are duplicative and not a model of pleading clarity.  The Court will describe the essential parts of the complaint's allegations and address some preliminary issues to make its analysis more clear.

Count III is titled "Violations of 42 U.S.C. § 1983 Refusing or Neglecting to Prevent." Count III is directed against all of the defendants and alleges that defendant Criss was acting under the direction of defendant St. Louis County (the "County"), and that defendants Rottnek and Hastings were acting under the direction of defendant St. Louis University ("SLU") "by and through the agreement, relationship, contract or association with St. Louis County."  Complaint, ¶ 36. Plaintiff then alleges that the County, "[a]cting under color of law and pursuant to official policy or custom" "knowingly, recklessly or with gross negligence failed to instruct, supervise, control and discipline on a continuing basis Defendants Criss and other employees involved in the supervision of Plaintiff in their duties to refrain from:

> a.  unlawfully discriminating against Plaintiff because of his disability;
>
> b.  engaging in a course of conduct which physically injured plaintiff by the failure to provide proper diet, medical care and medical supplies;
>
> c.  conspiring to violate the rights, privileges and immunities guaranteed to the Plaintiff by the Constitution and laws of the State of Missouri."

Complaint, ¶ 37.  Using similar language, plaintiff alleges that SLU, acting under color of state law and pursuant to official policy or custom, failed to instruct, supervise, control and discipline defendants Rottnek and Hastings with respect to the same conduct.  Id., ¶ 38.  Plaintiff then concludes that the defendants' deliberate indifference to his serious medical needs deprived him of his rights under the Due Process Clause of the Fourteenth Amendment.  Id., ¶ 39.  Count III seeks money damages.

Count IV is directed against "all Defendants in their Official Capacity."  Count IV is titled

"Violation of the Fourteenth Amendment of the United States Constitution Pursuant to 42 U.S.C.

§ 1983 (Due Process).  Count IV incorporates preceding paragraphs of the complaint and asserts:

> Defendants' actions, omissions, policies and practices complained of herein are a substantial departure from accepted professional judgment, standards and practices, constitute punishment, and reflect deliberate indifference to the known or obvious consequences to Plaintiff, including actual harm and pervasive risk of harm, and thereby unlawfully burden Plaintiff's protected liberty interest and violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Complaint, ¶ 40.  Count IV seeks money damages.

Count V is directed against "all Defendants in their Official Capacity."  Count V is titled

"Violation of the Eighth Amendment (as Incorporated by the Fourteenth Amendment) of the United

States Constitution Pursuant to 42 U.S.C. § 1983 (Cruel and Unusual Punishment).  Count V

incorporates preceding paragraphs of the complaint and asserts:

> Defendants' actions, omissions, policies and practices complained of herein constitute cruel and unusual punishment and subject Plaintiff to actual harm, to pervasive risk of harm and to other unlawful conditions in violation of the Eighth Amendment of the United States Constitution (as incorporated by the Fourteenth Amendment).

Complaint, ¶ 44.  Count V seeks a declaration that the "acts, omissions policies and practices

complained of herein are violated by the Eighth Amendment," and "injunctive relief set forth in the

prayer for relief."  The prayer for relief, however, seeks money damages in excess of $75,000 and

such "other and further relief the Court finds to be just and proper."

Count VI is directed against all defendants, and is titled "Violation of the Eighth and

Fourteenth Amendments Totality of Condition Affecting Physical Health."  Count VI incorporates

preceding paragraphs of the complaint and asserts:

As a direct, proximate result of Defendants' acts and omissions, Defendants have violated the basic human dignity of Plaintiff, and have abridged his right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Complaint, ¶ 47.

Count VII is directed against all defendants, and is titled "Violation of the Eighth and Fourteenth Amendments Denial of Timely Access to Medical Care." Count VII incorporates preceding paragraphs of the complaint and asserts:

That Plaintiff was denied timely access to medical car[e] and evaluation by qualified physicians. Symptoms requiring emergency or urgent care were not properly or promptly recognized and treated.

Defendants' deliberate indifference to Plaintiff in serious need of medical care, by refusing to provide medication properly or to provide care in such a way as to cause acute pain, anxiety, and potentially serious physical and medical injury constitutes cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution. Defendants' actions have caused serious and unreasonable harm to plaintiff's health.

Complaint, ¶¶ 48-49. Count VII seeks money damages.

Several aspects of the complaint merit preliminary discussion. First, plaintiff alleges that he was a pretrial detainee and asserts claims under the Eighth and Fourteenth Amendments. Pretrial detainees' § 1983 claims are analyzed under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. Edwards v. Byrd, 750 F.3d 728, 732 (8th Cir. 2014); McRaven v. Sanders, 577 F.3d 974, 979 (8th Cir. 2009). The Eighth Amendment applies only to convicted prisoners. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014). Due process prohibits *any* punishment of a pretrial detainee. Edwards, 750 F.3d at 732, n.2. In contrast, a sentenced prisoner may be punished, but the Eighth Amendment requires that the punishment imposed not be cruel and unusual. Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979). The Court therefore disregards as surplusage the complaint's references

9

to the Eighth Amendment and cruel and unusual punishment. Deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The Court will apply the deliberate indifference standard to all of plaintiff's § 1983 claims.

Second, as stated above, plaintiff's § 1983 claims in Counts IV and V are directed against "all Defendants in their Official Capacity." Complaint at 7, 8. The complaint does not specifically state that the individual defendants are being sued in their individual capacities, and the labels of Counts IV and V are the only mention of official capacity in the complaint. The Eighth Circuit has repeatedly held that where a complaint does not specifically name the defendants in their individual capacities, it is presumed the plaintiff sued the individual defendants only in their official capacities. See Baker v. Chisom, 501 F.3d 920, 923-24 (8th Cir. 2007).[3] Section 1983 provides no cause of action against agents of a governmental entity acting in their official capacities, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989). A suit against a public official in his or her official capacity is actually a suit against the entity for which the official is an agent. Kentucky v. Graham, 473 U.S. 159, 165 (1985). In such a case, the plaintiff must prove that the entity "*itself* caused the constitutional violation at issue." Kuha v. City of Minnetonka, 365 F.3d 590, 604 (8th Cir. 2003) (emphasis in original), overruled on other grounds by Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385 (8th Cir. 2007) (en banc).. Therefore, to establish the liability of an official acting in his official capacity, the plaintiff must prove that a policy or custom of the entity caused the alleged violation. Rogers v. City of Little Rock, 152 F.3d 790, 800 (8th Cir. 1998).

---

[3]None of the defendants raise the issue of failure to allege individual capacity in their dispositive motions.

Because plaintiff failed to specifically name the defendants in their individual capacities in his complaint, it would be proper to interpret Counts III through VII as being asserted only against the entity defendants, SLU and St. Louis County. The Court concludes, however, that plaintiff fails to state a claim against the individual defendants and will also address those defendants' dispositive motions.

Third, to the extent the complaint attempts to assert a conspiracy claim under § 1983 in paragraphs 37.c. and 38.c., it fails to do so. A conspiracy claim under § 1983 alleging a violation of constitutional rights "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010). The complaint is devoid of any such allegations of specific facts, and its uses of the term "conspiring" in Count III are mere labels and conclusions.

Fourth, to the extent the complaint attempts to assert an equal protection violation under § 1983 in paragraphs 37.a. and 38.a., it fails to do so. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This requires state actors to "to treat similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013). To state an actionable equal protection claim, plaintiff must allege facts to show that he has been treated differently from similarly situated individuals. See Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000); Klinger v. Department of Corr., 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, a plaintiff must show that he belongs to a group that had been treated less favorably than others who are "similarly situated"); see also Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) ("In order to establish such an equal protection claim, a prisoner must

show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'"). Plaintiff's complaint fails to allege any facts tending to show he has been treated differently than other similarly situated individuals.

Finally, with respect to the defendants' motions, defendants Rottnek, Hastings, and SLU seek dismissal of plaintiff's § 1983 claims in Counts III through VI, but fail to address Count VII which also seeks to impose liability upon them pursuant to § 1983. These defendants' Answers similarly fail to acknowledge the existence of Count VII. Defendants Criss and the County move to dismiss Count VII. Because the arguments and analysis applicable to Counts III through VI also apply to Count VII, and plaintiff has notice that defendants are seeking the dismissal of his § 1983 claims, the Court addresses Count VII as if it had been included in Rottnek, Hastings and SLU's motions to dismiss.

C. *Plaintiff Fails to State a § 1983 Claim Against Defendants Rottnek and Hastings*

Defendants Rottnek and Hastings move to dismiss plaintiff's § 1983 claims asserting that plaintiff has failed to plead facts to show they acted with reckless indifference to his serious medical needs. As stated above, the Court construes defendants' motion to dismiss as a motion for judgment on the pleadings pursuant to Rule 12(h)(2), because they previously filed an Answer. Defendants Rottnek and Hastings also assert they are entitled to qualified immunity.

The complaint's factual allegations against defendant Rottnek are that he was a medical doctor and an employee and/or agent of SLU, whose duties included "heading the St. Louis County, Missouri department known as Corrections Medicine." Complaint, ¶ 9. Plaintiff alleges that Corrections Medicine is "concerned with the health and welfare of detainees and inmates held within the St. Louis County Jail." Id., ¶ 5. Plaintiff alleges that on March 1, 2013, Dr. Rottnek "ordered

that no insulin was to be given until levels could be established and he concurred with the assessment and plan regarding Plaintiff's medical care." Id., ¶ 10. Plaintiff also alleges that on March 1, 2013, his "assessment and plan including the checking of blood sugar QID, four times per day, with insulin to be given on a sliding scale basis." Id., ¶ 11. The complaint does not contain any other factual allegations about defendant Rottnek.

The complaint's factual allegations against defendant Hastings are that she was a medical doctor and an employee and/or agent of SLU, whose duties included "working with the St. Louis County, Missouri department known as Corrections Medicine." Complaint, ¶ 10. Plaintiff alleges that Dr. Hastings gave a telephone order on March 3, 2013, at 2:40 a.m., for plaintiff to be transferred to the infirmary at the St. Louis County Jail and given insulin and intravenous fluids. Id., ¶ 20. Plaintiff alleges that while he was in the infirmary on March 3, 2013, defendant Hastings "was consulted on several occasions by telephone regarding the Plaintiff's condition, with various orders given over the telephone, none of which were effective in controlling Plaintiff's blood sugars." Id., ¶ 21. Finally, plaintiff alleges that at 11:45 p.m. on March 3, 2013, while his medical condition was uncontrolled and he was in diabetic ketoacidosis, defendant Hastings ordered him transferred to the hospital by ambulance "non-emergently." Id., ¶ 22. The complaint does not contain any other factual allegations about defendant Hastings.

As previously stated, plaintiff was a pretrial detainee at the time of the incidents alleged in the complaint. Pretrial detainees' § 1983 claims are analyzed under the Due Process Clause of the Fourteenth Amendment. Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007)). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." Id. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and

wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quotations and citation omitted). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05 (footnotes omitted). "An official who is deliberately indifferent to a prisoner's medical needs is subject to suit under § 1983." McRaven, 577 F.3d 974, 979 (8th Cir. 2009).

"Deliberate indifference has both an objective and a subjective component." Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (quoted case omitted). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." Id. "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." Id. The Eighth Circuit has recently described the burden a plaintiff must meet to establish the subjective component:

> "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (internal quotation omitted). This onerous standard requires a showing "more than negligence, more even than gross negligence," Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008), but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate," Schaub v. VonWald, 638 F.3d 905, 914-15 (8th Cir. 2011).

> Circumstantial evidence may be used to establish the subjective mental state, and "a factfinder may determine that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious." Vaughn, 557 F.3d at 908-09 (alteration in original) (internal quotation omitted). "But '[i]t is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known' about the risk." Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) (alterations in original) (quoting Farmer v. Brennan, 511 U.S. 825, 843 n.8 (1994)). Even acting unreasonably in response to a known risk is not sufficient to prove deliberate

indifference.  Id.  However, if a response to a known risk is obviously inadequate, this may lead to an inference that the officer "recognized the inappropriateness of his conduct."  Id.

Thompson v. King, 730 F.3d 742, 746-47 (8th Cir. 2013).

Here, the complaint alleges that plaintiff had an objectively serious medical need, Type 1 diabetes for which he used an insulin pump.  This is sufficient to meet the objective portion of deliberate indifference.  Plaintiff does not, however, allege facts sufficient to establish the subjective component that defendants Rottnek and Hastings actually knew of, but deliberately disregarded, his serious medical need.  As stated above, this is an "onerous standard" that requires a showing of a mental state akin to criminal recklessness.  Vaughn, 557 F.3d at 908.

With respect to defendant Rottnek, plaintiff pleads that his insulin pump was removed and that Rottnek ordered no insulin was to be given until plaintiff's blood sugar levels could be established, and that Rottnek concurred with the assessment and plan for plaintiff's medical care that included checking blood sugar four times per day, with insulin to be given on a sliding scale basis. Plaintiff's allegations against defendant Rottnek, if proved, arise only to the level of medical malpractice or a disagreement regarding the appropriate treatment, and do not suffice to show that Rottnek inflicted pain unnecessarily and wantonly.  Estelle, 429 U.S. at 103-04.  Plaintiff appears to acknowledge as much, having asserted a medical malpractice claim and described the defendants' conduct in his complaint as "negligent" and not within the "standard of [medical] care."  Complaint, ¶¶ 26-28.

Plaintiff argues in his opposition memorandum that he pleads Rottnek acted with deliberate indifference because "all defendants" knew that failure to provide insulin and test for blood sugar put him at risk for death, Doc. 22 at 7; but this argument is contradicted by the complaint's allegation that Rottnek approved a treatment plan calling for testing plaintiff's blood sugar levels

four times per day with insulin to be given on a sliding scale basis. Plaintiff does not allege facts showing that Rottnek did not test his blood sugar or administer insulin to him. Thus, plaintiff's complaint alleges that his condition was monitored and he was provided with medical treatment, although he believes the treatment was substandard.

Plaintiff also argues in his opposition that because Rottnek is the Director of Corrections Medicine, there is a "logical deduction that he has oversight as to what goes on at the Justice Center and that he is aware of should be aware that diabetics are part of the population and must be treated with insulin and a proper diet." Id. at 8. The complaint, however, contains no factual allegations concerning Rottnek's duties or responsibilities as Director of Corrections Medicine, either generally or specifically with respect to inmate diets. To the extent plaintiff attempts to rely on Rottnek's status as a supervisor, supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate. See Iqbal, 556 U.S. at 676. To state a claim, plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. Id. Further, plaintiff cannot add factual allegations to his complaint by raising them in his memorandum in opposition to a motion to dismiss. See Gallagher v. City of Clayton, 699 F.3d 1013, 1022 (8th Cir. 2012).

Plaintiff's factual allegations against Rottnek simply do not rise to the level of a Due Process violation. Cf. Barto v. Westmoreland County, 2011 WL 926096, at *3 (W.D. Pa. Jan. 27, 2011) (finding no deliberate indifference where plaintiff's insulin pump was removed but his blood sugar was monitored and he was to be given insulin on a sliding scale according to his blood levels, even though plaintiff claimed his blood sugar rose to dangerous levels and he suffered seizures as a result); report and recommendation adopted, 2011 WL 915323 (W.D. Pa. Mar. 15, 2011).

Similarly, plaintiff's allegations against defendant Hastings, if proved, arise only to the level of medical malpractice or a disagreement regarding the appropriate treatment, and do not suffice to

show that Hastings inflicted pain unnecessarily and wantonly.  Estelle, 429 U.S. at 103-04.  Plaintiff alleges that Hastings ordered him to be transferred to the jail infirmary and given insulin and intravenous fluids, was consulted by phone several times regarding plaintiff's condition and gave "various orders" that were not effective in controlling plaintiff's blood sugar, and ordered him transferred to the hospital by ambulance "non-emergently" while his medical condition "was uncontrolled and he was in diabetic ketoacidosis."

The complaint's allegations affirmatively indicate that Hastings actively attempted to treat plaintiff in various ways, although the attempts were unsuccessful, and thus was monitoring his condition and providing medical treatment.  These allegations cannot support a finding of deliberate indifference.  Plaintiff's allegation that Hastings did not have him transported to the hospital on an emergency basis similarly does not rise to the level of the deliberate indifference, as it does not equate to criminal recklessness or the unnecessary or wanton infliction of pain.

For these reasons, the Court concludes that defendants Rottnek and Hastings are entitled to judgment on the pleadings on plaintiff's § 1983 claims, as plaintiff cannot establish that they were deliberately indifferent to his serious medical need.  As a result, the Court does not reach the defendants' arguments that they are entitled to qualified immunity.

D. *Plaintiff Fails to State a § 1983 Claim against St. Louis University*

Defendant St. Louis University ("SLU") moves to dismiss plaintiff's § 1983 claims against it on the basis that plaintiff is seeking to impose respondeat superior liability on it for the allegedly unconstitutional actions of its employees in depriving him of his insulin pump.  As stated above, the Court construes SLU's motion to dismiss as a motion for judgment on the pleadings because SLU previously filed an Answer.  Plaintiff has not responded to SLU's motion.

It is well established that § 1983 will not support a claim based on a respondeat superior theory of liability. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). Liability under § 1983 requires a causal link to and direct responsibility for the alleged deprivation of rights. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). An entity acting under color of state law cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior. See Monell, 436 U.S. at 694 (municipality will not be held vicariously liable under § 1983 for injuries inflicted solely by its employees). Rather, a plaintiff seeking to impose such liability is required to identify either an official policy or a widespread custom or practice that was the moving force behind his injury. See Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997); Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013). In addition, the Eighth Circuit has "consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 902, 922 (8th Cir. 2005).

Here, plaintiff alleges that SLU has an agreement with St. Louis County regarding the care and treatment of detainees and inmates in the County's control, and that SLU employed defendants Rottnek and Hastings who acted under its direction and control. Plaintiff alleges that SLU, "[a]cting under color of law and pursuant to official policy or custom," failed to "instruct, supervise, control and discipline on a continuing basis Defendants Rottnek and Hastings in their duties to refrain from:

    a.  unlawfully discriminating against Plaintiff because of his disability;

    b.  engaging in a course of conduct which physically injured plaintiff by the failure to provide proper diet, medical care and medical supplies;

    c.  conspiring to violate the rights, privileges and immunities guaranteed to the Plaintiff by the Constitution and laws of the State of Missouri."

Complaint, ¶ 38.[4]

The terms "policy" and "custom" are not used interchangeably.  Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).  A "'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  Id.  "Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is 'taken by the highest officials responsible for setting policy in that area of the government's business.'"  Rynders v. Williams, 650 F.3d 1188, 1195 (8th Cir. 2011) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)).

"Alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law."  McGautha v. Jackson Cnty., Mo., Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994) (internal quotation marks and citation omitted).  "Liability for an unconstitutional custom or usage, however, cannot arise from a single act."  Id. at 57.  Instead, "a custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct."  Jenkins v. Cnty. of Hennepin, Minn., 557 F.3d 628, 634 (8th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court has rejected any heightened pleading requirement for claims against an entity acting under color of state law.  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 165-66 (1993).  To survive a motion for judgment on the pleadings, however, a complaint must allege facts sufficient "to state a claim to relief that is

---

[4]As discussed *supra* at 11-12, the Court finds as a matter of law that plaintiff's equal protection and conspiracy allegations in subparagraphs a. and c. fail to state a claim upon which relief can be granted.

plausible on its face." Twombly, 550 U.S. at 570. Considering this pleading standard, in order to state a viable § 1983 claim against SLU, plaintiff is required to plead facts sufficient to show at least an inference that his constitutional rights were violated as a result of action taken pursuant to an official policy, or as a result of misconduct so pervasive among non-policymakers as to constitute a widespread custom and practice with the force of law. See Kuha, 365 F.3d at 603-04.

Even assuming that plaintiff adequately alleged he suffered a constitutional deprivation, he has pleaded no facts in the complaint that would demonstrate the existence of either an official policy or widespread custom of SLU that caused a deprivation. Rather, all the facts alleged relate to the actions of the individual defendants and other persons who are not named as defendants, or are described as having been taken by "Defendants" generally.[5] Although plaintiff need not identify the specific unconstitutional policy to survive a motion for judgment on the pleadings, see Crumpley-Patterson v. Trinity Lutheran Hospital, 388 F.3d 588, 591 (8th Cir. 2004), he must at least allege facts that would support the drawing of an inference that the conduct complained of resulted from the existence of an unconstitutional policy or custom. Id. This he has failed to do. Plaintiff's allegations concerning an official policy or custom of SLU are mere labels and conclusions, which are inadequate to state a claim. See Twombly, 550 U.S. at 555.

To the extent plaintiff asserts that SLU failed to train or supervise its employees, to state a viable § 1983 claim he must plead facts sufficient to show that (1) SLU's training or supervision

---

[5]For example, Paragraph 31 of the Complaint alleges,

> The aforementioned actions by Defendants and their employees and/or agents was [sic] a breach of the duty owed to Plaintiff while he was confined in the St. Louis County Jail, specifically included but not limited to, the decision and/or policy to remove an insulin pump from a type 1 diabetic individual, who requires insulin to live.

practices of its employees were inadequate; (2) SLU was deliberately indifferent to the rights of others in adopting these training or supervision practices, and SLU's failure to train or supervise was a result of deliberate and conscious choices it made; and (3) SLU's alleged training or supervision deficiencies caused plaintiff's constitutional deprivation. See Ulrich v. Pope County, 715 F.3d 1054, 1061 (8th Cir. 2013).

Plaintiff alleges no facts in his complaint to make this showing. Plaintiff labels SLU's supervision and training practices as knowing, reckless or grossly negligent, complaint ¶ 38, but points to no facts to support this assertion other than the example of his own medical treatment during detention. Plaintiff further fails to provide facts in his complaint to support his assertion that SLU adopted deficient supervision or training practices with deliberate indifference to the constitutional rights of others, or that the supervision or training practices were the product of SLU's deliberate and conscious choices. See Ulrich, 715 F.3d at 1061.

In the absence of any such factual allegations, there is no basis to hold SLU liable under § 1983, as plaintiff's factual allegations against SLU are based on respondeat superior, or vicarious liability. Because this is not a basis for liability under § 1983, SLU's motion to dismiss should be granted as to all § 1983 claims against it. Moreover, because plaintiff fails to allege facts sufficient to allege that a constitutional violation has occurred with respect to individual liability on an underlying substantive claim against defendants Rottnek or Hastings, he similarly fails to state a claim against SLU based on a theory of failure to train or supervise. See McCoy, 411 F.3d at 922.

E. *Plaintiff Fails to State a § 1983 Claim Against Defendant Criss*

Defendant Criss moves to dismiss plaintiff's § 1983 claims against her, asserting that plaintiff has failed to plead facts to show that she acted with deliberate indifference to his serious medical needs. Defendant Criss also asserts that she is entitled to qualified immunity.

The complaint's factual allegations against defendant Criss are that (1) she was a registered nurse practitioner employed by St. Louis County, and (2) she gave a telephone order for the removal of plaintiff's insulin pump at the time of his initial assessment on March 1, 2013. Complaint, ¶¶ 6, 14.

As set forth above, to state a claim under § 1983, plaintiff must allege facts showing that he had an objectively serious medical need and that the "defendant actually knew of, but deliberately disregarded, such need." Vaughn, 557 F.3d at 908. The complaint alleges that plaintiff had an objectively serious medical need, Type 1 diabetes for which he had an insulin pump. Plaintiff does not, however, allege facts sufficient to establish the subjective component that defendant Criss actually knew of but deliberately disregarded his serious medical need. As stated above, this is an "onerous standard" that requires a showing of a mental state akin to criminal recklessness. Vaughn, 557 F.3d at 908.

Plaintiff's claim is that defendant Criss violated his constitutional rights by ordering the removal of his insulin pump. Plaintiff cites no authority for the proposition that ordering an insulin pump removed, by itself, rises to the level of a constitutional violation, and the Court is unable to find any supporting authority for such a proposition. This is particularly true where plaintiff also alleges that on the same day his pump was removed, a treatment plan was established that called for testing his blood sugar levels four times per day with insulin to be given on a sliding scale basis. Thus, plaintiff's complaint alleges that his condition was monitored and he was provided with medical treatment, although he believes the treatment was substandard.

Plaintiff's allegations against defendant Criss, if proved, arise only to the level of medical malpractice or a disagreement regarding the appropriate treatment, and do not suffice to show that Criss inflicted pain unnecessarily and wantonly. Estelle, 429 U.S. at 103-04. Plaintiff appears to

acknowledge as much, having asserted a medical malpractice claim and alleged that the defendants "negligently removed [his] insulin pump" and breached the "standard of [medical] care." Complaint, ¶¶ 26-28.  Accordingly, defendant Criss is entitled to dismissal of plaintiff's § 1983 claims against her.  The Court therefore does not reach her qualified immunity argument.

F. *Plaintiff Fails to State a § 1983 Claim Against Defendant St. Louis County*

Defendant St. Louis County moves to dismiss plaintiff's § 1983 claims, asserting that there is no respondeat superior liability under § 1983, that plaintiff has failed to plead facts to show a custom or policy of the County was the moving force behind a violation of his constitutional rights, and that the County cannot be liable as a matter of law if its individual employee did not violate the constitution.

As stated above, an entity acting under color of state law cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior. See Monell, 436 U.S. at 694.  As discussed above with respect to defendant SLU, plaintiff similarly alleges that the County, "[a]cting under color of law and pursuant to official policy or custom," failed to "instruct, supervise, control and discipline on a continuing basis Defendants Criss and other employees in their duties to refrain from:

> a.  unlawfully discriminating against Plaintiff because of his disability;
>
> b.  engaging in a course of conduct which physically injured plaintiff by the failure to provide proper diet, medical care and medical supplies;
>
> c.  conspiring to violate the rights, privileges and immunities guaranteed to the Plaintiff by the Constitution and laws of the State of Missouri."

Complaint, ¶ 37.[6]

---

[6]See footnote 4, *supra*.

Plaintiff fails to plead facts sufficient to show at least an inference that his constitutional rights were violated as a result of action taken pursuant to an official County policy, or as a result of misconduct so pervasive among non-policymakers as to constitute a widespread custom and practice with the force of law. See Kuha, 365 F.3d at 603-04. Plaintiff's allegations concerning an official County policy or custom are mere labels and conclusions, which are inadequate to state a claim. See Twombly, 550 U.S. at 555. Further, because plaintiff fails to allege facts sufficient to allege that a constitutional violation has occurred with respect to individual liability on an underlying substantive claim against defendant Criss, he similarly fails to state a claim against the County based on a theory of failure to train or supervise. See McCoy, 411 F.3d at 922.

## IV. Conclusion

For the foregoing reasons, the Court concludes that plaintiff's state law claims in Counts I and II must be dismissed without prejudice for failure to file the health care affidavit required by § 538.225, Mo. Rev. Stat. Plaintiff's claims under 42 U.S.C. § 1983 should be dismissed for failure to state a claim upon which relief can be granted. Defendants' motions to dismiss, construed as motions for judgment on the pleadings as to defendants Rottnek, Hastings and SLU, will be granted.

At the conclusion of plaintiff's opposition to the motions to dismiss, he asks for time to file a Second Amended Complaint in the event the motions are granted. Although normally leave to amend is to be freely granted, see Fed. R. Civ. P. 15(a)(2), the Eighth Circuit has held that a district court properly denies leave to amend where a plaintiff does not submit a motion for leave to amend, but merely concludes his response to the defendant's motion to dismiss with a request for leave to amend and does not offer a proposed amended complaint or even the substance of the proposed amendment. Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc., 641 F.3d 1023, 1030 (8th Cir. 2011); In re 2007 Novastar Financial, Inc., Secs. Litig., 579 F.3d 878, 884-85

(8th Cir. 2009). The Court in the exercise of its discretion denies plaintiff's request for leave to amend.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Rottnek and Hastings' Joint Motion to Dismiss Counts I and II, construed as a motion for judgment on the pleadings, is **GRANTED**. [Doc. 43]

**IT IS FURTHER ORDERED** that defendants Rottnek and Hastings' Joint Motion to Dismiss Count I and Joint Motion to Dismiss Count II are **DENIED as moot**, having been superseded. [Docs. 9, 10]

**IT IS FURTHER ORDERED** that defendant St. Louis University's Motion to Dismiss Counts I and II, construed as a motion for judgment on the pleadings, is **GRANTED**. [Doc. 33]

**IT IS FURTHER ORDERED** that defendant St. Louis University's Motion to Dismiss Count II for failure to state a claim upon which relief can be granted is **DENIED as moot**. [Doc. 35]

**IT IS FURTHER ORDERED** that defendant St. Louis University's Motion to Dismiss Counts III through VII, construed as a motion for judgment on the pleadings, is **GRANTED**. [Doc. 37]

**IT IS FURTHER ORDERED** that defendants Rottnek and Hastings' Joint Motion to Dismiss Counts III through VII, construed as a motion for judgment on the pleadings, is **GRANTED**. [Doc. 11]

**IT IS FURTHER ORDERED** that defendants St. Louis County and Criss's Motion to Dismiss is **GRANTED**. [Doc. 15]

An appropriate Order of Dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  23rd  day of February, 2015.